**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **ERNIE ISOMURA**, Defendant–Appellant

NO. 15690

(CR. NO. 90–0155(1))

NOVEMBER 4, 1992

BURNS, C.J., HEEN, AND WATANABE, JJ.

334

OPINION OF THE COURT BY WATANABE, J.

In this appeal, we are called to determine which sentencing statute controls: Hawai‘i Revised Statutes (HRS) § 706–610(2) (Supp. 1991), which treats every felony defined outside the Hawai‘i Penal Code as a class C felony for sentencing purposes; or HRS § 291C–12(b) (1985), which provides that any person who commits the felony of Failure to Stop at the Scene of Accident Involving Death or Personal Injury (Failure to Stop) shall be "fined not more than $1,000 or imprisoned not more than ten years, or both."

We conclude that HRS § 706–610(2) controls. Accordingly, we vacate Defendant–Appellant Ernie Isomura's (Defendant) sentence of ten years of imprisonment and remand this case for resentencing.

## FACTS AND PROCEDURAL HISTORY

Following an accident in which Defendant's car struck and killed three tourist bicyclists on Molokai, Defendant was convicted by a jury of three counts of Negligent Homicide in the Third Degree, HRS § 707–704 (Supp. 1991), a misdemeanor; one count of Failure to Stop, HRS § 291C–12(a) (1985), a felony; and one count of Storage of Opened Container Containing Intoxicating Liquor, HRS § 291–3.3 (Supp. 1991), a violation.

The trial judge thereafter sentenced Defendant to a jail term of one year each for the three Negligent Homicide counts, and an indeterminate term of ten years of imprisonment for the Failure to Stop offense, all sentences to be served concurrently. The judge also imposed a $500 fine for the Storage of Opened Container Containing Intoxicating Liquor. count and permanently revoked Defendant's driver's license. Defendant filed a timely appeal.

## DISCUSSION

Defendant's sole contention on appeal is that the trial court improperly applied HRS § 291C–12(a) in sentencing him to a ten–year prison term for the Failure to Stop count. Defendant argues that the trial court should instead have sentenced him to a five–year term of imprisonment pursuant to HRS §§ 706–610(2) (Supp. 1991) and 706–660 (Supp. 1991).

When Defendant was indicted for the Failure to Stop offense on May 21, 1990, HRS § 291C–12(b) (1985)[1] provided for penalties of a fine of "not more than $1,000 or imprison[ment of] not more than ten years, or both." However, HRS § 706–610(2)[2] (Supp. 1991), part of the Hawai'i Penal Code (Code), provides:

> (2) A felony defined by any statute of this State other than this Code shall constitute for the purpose of sentence a class C felony, except if another provision of law specifically defines a felony to be of a specified class as defined by this Code, such felony shall be treated for the purpose of sentence as provided by this chapter for that class of felony.

The maximum prison term for a class B felony is ten years and for a class C felony, five years. HRS § 706–660 (Supp. 1991).

Defendant essentially argues that: (1) an HRS § 291C–12(a) Failure to Stop offense is clearly a felony as defined in HRS

---

[1] Effective June 17, 1992, HRS § 291C–12(b) (1985) was amended to read as follows:

> (b) Any person who violates subsection (a) shall be guilty of a class B felony.

Act 243, § 4, 1992 Haw. Sess. Laws 642.

[2] Prior to its amendment in 1986, HRS § 706–610(2) read as follows:

> (2) Notwithstanding any other provision of law, a felony defined by any statute of this State other than this Code shall constitute for the purpose of sentence a class C felony.

§ 701–107(2),[3] since a person convicted thereof may be sentenced, pursuant to HRS § 291C–12(b), to a prison term in excess of one year; (2) HRS § 291C–12(b), which defines the Failure to Stop offense as a felony, clearly is a statute outside the Code; (3) HRS § 291C–12(b) does not fall within the HRS § 706–610(2) exception because it does not specifically define the Failure to Stop offense as a class A or class B felony; and (4) therefore, the Failure to Stop offense must be sentenced as a class C felony. For the reasons discussed below, we agree.

### A.

HRS § 291C–12 was enacted in 1971, Act 150, § 1, 1971 Haw. Sess. Laws 323, 327, 347, took effect on January 1, 1972, and was not amended substantively until 1992, when subsection (b) was amended to classify the Failure to Stop offense as a class B felony. *See* Act 243, § 4, 1992 Haw. Sess. Laws 642. HRS § 291C–12 was thus already on the books when the Hawai'i Penal Code was adopted by the Legislature in 1972, to take effect on January 1, 1973. Act 9, 1972 Haw. Sess. Laws 32.

In enacting the Code, the Legislature indicated that its purpose was to:

> effect the first complete reorganization of the criminal law of the State of Hawai'i by a redefinition of criminal offenses, elimination of inconsistencies, modernization of language, logical rearrangement of the criminal provisions, and amendment of the substantive criminal laws. The [Code], originally drafted by the Committee on Penal Law Revision of the Judicial Council of Hawai'i and a derivative of the Model Penal Code as recommended by

---

[3] HRS § 701–107(2) provides that: "[a] crime is a felony if it is so designated in this Code or if persons convicted thereof may be sentenced to imprisonment for a term which is in excess of one year."

the American Law Institute, is designed to update the
criminal law and to ease the growing public feeling of
dissatisfaction with a body of criminal law that is still
largely uncodified.

House Conf. Comm. Rep. No. 1 on H.B. No. 20, 1972 House Journal 1036, Senate Conf. Comm. Rep. No. 1 on H.B. No. 20, 1972 Senate Journal 734.

The Legislature recognized, however, that even with the adoption of the Code, there would continue to be crimes defined by statutes outside the Code. The Legislature thus provided in HRS § 706–610(2) that "[n]otwithstanding any other provision of law, a felony defined by any statute of this State other than this Code shall constitute for the purpose of sentence a class C felony."

The Commentary to HRS § 706–610, which, pursuant to HRS § 701–105 may be used as an aid in understanding the provisions of the Code, states in relevant part:

Subsection (2) reduces to a class C felony, those
felonies defined by a statute not within this Code. This
reflects the "judgment that the [Penal] Code should deal
at least with any area of criminality involving crimes so
serious that classification as a [class A or class B] felony
for sentence purposes is justified." [Quoting from the
Model Penal Code, Tentative Draft No. 2, comments at
10–11 (1954)].

Since HRS § 706–610(2) was derived from section 6.01(2) of the Model Penal Code, the following commentary on the section by the American Law Institute is also instructive:

**Felonies Outside the Penal Code.** Section 6.01(2)
asserts that a felony defined in any statute not contained
in the penal code shall be classified as a third degree felony "notwithstanding any other provision of law." Two
judgments underlie this provision.

The first is that some control over the proliferation of statutory penalties in crimes created in other titles of the codified laws is clearly necessary in order to rectify and prevent recurrence of the chaotic condition that prevailed at the time the Model Code was drafted. The second is that any offense that deserves classification above the lowest category of felony should be processed through those committees of the legislature that have control of the penal law. Unless both principles are preserved, the integrity of the grading structure achieved by counterpart provisions to Section 6.01(1) is likely to be undermined, either by continuing expansion of the grading categories or by the introduction of inconsistencies in the relative gravity of offenses. Any offense that is serious enough to be classified in any but the lowest class of felony, in other words, should be subjected to rigorous examination by those charged with responsibility for the penal code in order to assure consistency with the principles underlying that code.

MODEL PENAL CODE AND COMMENTARIES (Official Draft and Revised Comments 1962), Commentary at 42–43.

The foregoing evinces a clear legislative intent that upon the adoption of the Code, offenses committed in violation of statutes outside the Code were to be punished as class C felonies.

HRS § 291C–12 predated and is outside the Code and continued substantively intact, after the Code's adoption until June 17, 1992. The Failure to Stop offense prohibited by HRS § 291C–12 is clearly a felony in view of its penalties and is not specifically classified as a class A or class B felony. Therefore, any violations of HRS § 291C–12(a) that occurred prior to June 17, 1992 were clearly intended by the Legislature to be sentenced as class C felonies pursuant to HRS § 706–610(2), which upon the Code's

adoption, superseded the conflicting sentencing provision in HRS § 291C–12(b).

## B.

The State maintains, however, that the Hawai'i Supreme Court's decision in *State v. Spencer*, 68 Haw. 622, 725 P.2d 799 (1986), requires us to conclude otherwise.

In *Spencer*, the defendant pled guilty to possession of a firearm in violation of HRS § 134–7(b). Because HRS § 134–7(f) provided that a felon who violated HRS § 134–7(b) was guilty of a class B felony, the trial court sentenced the defendant to a ten–year prison term. At that time, HRS § 706–610(2) provided that a felony defined by a statute outside the Code constituted a class C felony for sentencing purposes.[4] Consequently, the defendant argued that the trial court should have imposed a five–year prison term for a class C felony. The supreme court, however, affirmed the trial court's sentence, reasoning as follows:

> Generally, where a specific and general statute overlap in their application, effect will be given to both if possible, since repeal by implication is disfavored. However, where there is a "plainly irreconcilable" conflict between a specific statute and a general statute governing the same subject matter the specific statute shall be favored.

68 Haw. at 624, 725 P.2d at 800 (citations omitted).

*Spencer*, however, is clearly distinguishable from the instant situation. First of all, HRS § 134–7(f), which the *Spencer* court construed, specifically defined the firearms offense as a class B felony, thus placing it squarely in conflict with HRS § 706–610(2)'s mandate that statutes outside the Code be sentenced as class C felonies. When Defendant committed the Failure to Stop offense in the

---

[4] *See supra* note 2.

instant case, however, HRS § 291C–12(b) did not specifically classify the offense as either a class A or class B felony, but instead vested considerable discretion in the trial court to sentence a defendant to prison for a term "not more than ten years." Moreover, unlike HRS § 291C–12, which predated the Code, HRS § 134–7(f) was not enacted until 1981, after the effective date of the Code, *see* Act 239, § 5, 1981 Haw. Sess. Laws 462, 466, and thus, its conflict with HRS § 706–610(2) could be resolved in favor of the later legislative enactment.

## C.

Subsequent to the adoption of the Code, the Hawai'i Legislature has indicated a willingness to retreat somewhat from the mandate of HRS § 706–610(2). In 1986, for example, the legislature amended HRS § 706–610(2) as follows:

> (2) [Notwithstanding any other provision of law, a] A felony defined by any statute of this State other than this Code shall constitute for the purpose of sentence a class C felony[.], except if another provision of law specifically defines a felony to be of a specified class as defined by this Code, such felony shall be treated for the purpose of sentence as provided by this chapter for that class of felony.

Act 314, § 19, 1986 Haw. Sess. Laws 593, 603 (bracketed language deleted; new language underscored).

The reason for the amendment to HRS § 706–610 is explained in various legislative committee reports as follows:

> *Under section 706–610, any felony defined outside of the penal code is designated as a class C felony.* The section has been amended to allow provisions enacted subsequent to 1973 to specifically designate crimes as class A or B felonies.

Senate Conf. Comm. Rep. No. 51–86, 1986 Senate Journal 747, 749; House Conf. Comm. Rep. No. 51–86, 1986 House Journal 937, 938; Senate Stand. Comm. Rep. No. 820–86, 1986 Senate Journal 1168, 1170 (emphasis added).

The Legislature thus clearly recognized that felonies not contained in the Hawai'i Penal Code were to be sentenced as class C felonies, and took steps to allow such felonies to be classified instead as class A or class B felonies for sentencing purposes. Indeed, just this year, the legislature amended HRS § 291C–12(b) to make violations of HRS § 291C–12(a) a class B felony. Act 243, 1992 Haw. Sess. Laws 642, 643. Therefore, beginning June 17, 1992,[5] the effective date of the amendment, persons convicted of the Failing to Stop offense are treated, for sentencing purposes, as class B offenders, and not class C offenders under HRS § 706–610(1)(b).

In view of the foregoing, we conclude that a violation of the pre–June 17, 1992 version of HRS § 291C–12 must be sentenced as a class C offense under HRS § 706–610(2). To ignore the mandate of HRS § 706–610(2), as the State urges us to do, would effectively nullify its provisions and render it meaningless. Such a construction would be inconsistent not only with the legislature's intent but also with the general rule that a statute should be interpreted to give it effect and to avoid a construction that would render it a vain legislative effort or a nullity. *Levy v. Kimball*, 51 Haw. 540, 545, 465 P.2d 580, 583 (1970).

## ORDER

Accordingly, we vacate that part of the Judgment, Guilty Conviction and Sentence, dated September 23, 1991, whereby the Second Circuit Court sentenced Defendant to ten years of imprisonment for his conviction of Failure to Stop, a violation of HRS

---

[5] *See supra* note 1.

§ 291C–12(a) (Count 4), and remand this case for resentencing as a class C felony.

*Timothy E. Rakieten*, Deputy Public Defender, on the briefs for defendant–appellant.

*James T. Carter*, Deputy Prosecuting Attorney, County of Maui, on the brief for plaintiff–appellee.

## DISSENTING OPINION OF BURNS, C.J.

I respectfully dissent.

HRS § 706–610(2) (Supp. 1991) states as follows:

> A felony defined by any statute of this State other than this Code shall constitute for the purpose of sentence a class C felony, except if another provision of law specifically defines a felony to be of a specified class as defined by this Code, such felony shall be treated for the purpose of sentence as provided by this chapter for that class of felony.

The majority concludes that the greater maximum sentence authorized by HRS § 291C–12(b) (1985) was not one of HRS § 706–610(2)'s authorized exceptions. I disagree.

Commencing June 17, 1992, HRS § 291C–12(b) expressly categorizes the felony proscribed by HRS § 291C–12(a) as a class B felony. Prior thereto, and on May 21, 1990 when Defendant violated HRS § 291C–12(a) (1985), HRS § 291C–12(b) did not express any alphabetical label for the crime. However, it expressly provided for "imprison[ment of] not more than ten years[.]" Since the maximum prison term for a class B felony is ten years whereas for a class C felony it is five years, HRS § 706–660 (Supp. 1991), the penalty expressly authorized by HRS § 291C–12(b) was a class B penalty.

Did HRS § 291C–12(b), prior to its amendment on June 17, 1991, specifically define HRS § 291C–12(b)'s felony to be of a specified class as defined by HRS § 706–660? The majority's answer is no, because HRS § 291C–12(b) did not then, as it does now, expressly state the alphabetical label "B." My answer is yes because, when HRS § 291C–12(b) specifically permitted imprisonment of not more than ten years, it thereby specifically defined the felony to be a class B felony. HRS § 706–610(2)'s exception when the "provision of law specifically defines a felony to be of a specified class as defined by this Code" unambiguously means more than "specifically states the alphabetical class" or "specifically classifies as a class A or class B felony." There is no meaningful difference between a provision that the felony is a class B felony and a provision that the maximum prison term for the felony is ten years.

In my view, the majority's decision invalidating HRS § 291C–12(b)'s authorization of "imprison[ment of] not more than ten years" is, to quote the majority opinion, "inconsistent not only with the legislature's intent but also with the general rule that a statute should be interpreted to give it effect and to avoid a construction that would render it a vain legislative effort or a nullity."

Additionally, I disagree that *State v. Spencer*, 68 Haw. 622, 725 P.2d 799 (1986), is "clearly distinguishable." When *Spencer* was decided and prior to January 1, 1987, HRS § 706–610(2) (1985) provided in its entirety as follows: "Notwithstanding any other provision of law, a felony defined by any statute of this State other than this Code shall constitute for the purpose of sentence a class C felony." In other words, when *Spencer* was decided, HRS § 706–610(2) did not permit any exception. Despite such legislative mandate, the supreme court applied the rule that "where there is a 'plainly irreconcilable' conflict between a specific statute and a general statute concerning the same subject matter, the specific statute will be favored," *Spencer*, 68 Haw. at 624, 725 P.2d at 800 (citation omitted), and enforced HRS § 291C–12(b) (1985) rather

than HRS § 706–610(2). The supreme court did not discuss the legislative history of HRS § 706–610(2).

As an inferior court, if there is a "plainly irreconcilable" conflict between HRS § 291C–12(b) and HRS § 706–610(2), we are obligated to follow the rule in *Spencer* and favor HRS § 291C–12(b). *See Robinson v. Ariyoshi*, 65 Haw. 641, 653, 658 P.2d 287, 297 (1982) (where a principle has been passed upon by the court of last resort, it is the duty of all inferior tribunals to adhere to the decision (quoting *Kapiolani Estate, Ltd. v. Atcherley*, 21 Haw. 441, 454 (1913) (citations omitted)).

Accordingly, I would affirm the sentence imposed by the circuit court.